UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDDIE HAMELL,

                        Plaintiff,

v.                                                          6:16-CV-0991
                                                            (GTS/ATB)
CITY OF UTICA; MICHAEL CERMINARO,
individually and in his official capacity; MICHAEL
D'AMBRO, individually and in his official
capacity; and TRICIA NICHOLSON, individually
and in her official capacity,

                        Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

EDDIE HAMELL, 16-B-1395
 Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. WILLIAM M. BORRILL                                     ZACHARY OREN, ESQ.
Corporation Counsel, City of Utica                          Assistant Corporation Counsel
  Counsel for Defendants
1 Kennedy Plaza, 2nd Floor
Utica, NY 13502

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this *pro se* civil rights action filed by Eddie Hamell

("Plaintiff") against the City of Utica, Officer Michael Cerminaro, Sergeant Michael D'Ambro,

and Investigator Tricia Nicholson ("Defendants"), is Defendants' motion for summary judgment.

(Dkt. No. 173.)  For the reasons set forth below, Defendants' motion for summary judgment is

granted in part and denied in part.

# I.     RELEVANT BACKGROUND

## A.     Plaintiff's Second Amended Complaint

Generally, in his Second Amended Complaint, Plaintiff asserts ten causes of action. (Dkt. No. 156, at 15-45 [Second Am. Compl.].)  First, Plaintiff asserts a claim against Defendant Cerminaro for the use of excessive force under the Fourth Amendment and 42 U.S.C. § 1983 arising from the force used against him on September 18, 2013.  (*Id.* at 15-17.)  More specifically, Plaintiff alleges that Defendant Cerminaro used excessive force against him by (a) grabbing his arm, (b) twisting his arm behind him and placing him into a submission hold, (c) pushing him toward the rear of his girlfriend's vehicle, and (d) pulling his jacket over his head and placing him in a choke-hold.  (*Id.*)

Second, Plaintiff asserts a claim against Defendant Cerminaro for unlawful seizure and arrest under the Fourth Amendment and 42 U.S.C. § 1983.  (*Id.* at 21-26.)  More specifically, Plaintiff alleges that Defendant Cerminaro unlawfully seized and arrested him despite the fact that he was attempting to comply with Defendant Cerminaro's order to go home.  (*Id.*)

Third, Plaintiff asserts a claim against Defendants Cerminaro and D'Ambro for excessive force under the Fourth Amendment and 42 U.S.C. § 1983, arising from the subsequent use of force against him on September 18, 2013.  (*Id.* at 21-26.)  More specifically, Plaintiff alleges that Defendants Cerminaro and D'Ambro used excessive force against him when (a) Defendant D'Ambo tackled him and Defendant Cerminaro to the ground following the events giving rise to the First Claim, which resulted in Plaintiff's face hitting the ground and his right hand being crushed under his chest, (b) Defendant D'Ambro placed him a choke-hold and remained on top of his back while Defendant Cerminaro demanded he give them his right arm, (c) Defendant

Cerminaro used his Taser in dart mode in the area of Plaintiff's lower back, and (d) Defendant

Cerminaro then twice used his Taser in drive-stun mode in the area of Plaintiff's left leg. (*Id.*)

Fourth, Plaintiff asserts a claim against Defendant D'Ambro for unlawful seizure and

arrest under the Fourth Amendment and 42 U.S.C. § 1983. (*Id.* at 26-29.) More specifically,

Plaintiff alleges that Defendant D'Ambro seized him when he intervened in the altercation

between Plaintiff and Defendant Cerminaro, transported Plaintiff to the Utica Police Department,

and caused him to be arrested. (*Id.*)

Fifth, Plaintiff asserts a claim against Defendants Cerminaro and D'Ambro for

intentional infliction of emotional distress under New York tort law. (*Id.* at 29-31.) More

specifically, Plaintiff alleges that Defendants Cerminaro and D'Ambro's use of excessive force

and subsequent restraint on his liberty resulted in emotional distress in the form of nightmares

and loss of sleep as well as continuous physical pain. (*Id.*)

Sixth, Plaintiff asserts a claim against Defendant Nicholson for unlawful seizure and

arrest under the Fourth Amendment and 42 U.S.C. § 1983. (*Id.* at 31-34.) More specifically,

Plaintiff alleges that Defendant Nicholson (a) conducted an investigation into the larceny at

Walmart for which Plaintiff was arrested, including a search of the vehicle belonging to

Plaintiff's girlfriend that was at the scene during the incident, and (b) filed a criminal complaint

against Plaintiff charging him with the larceny. (*Id.*)

Seventh, Plaintiff asserts a claim against Defendants Cerminaro, D'Ambro, and

Nicholson for false imprisonment under the Fourth Amendment and 42 U.S.C. § 1983. (*Id.* at

34-37.) More specifically, Plaintiff alleges that the actions of Defendants Cerminaro, D'Ambro,

and Nicholson in detaining and arresting him constituted false imprisonment. (*Id.*)

Eighth, Plaintiff asserts a claim against Defendants Cerminaro, D'Ambro, and Nicholson for malicious prosecution under the Fourth Amendment and 42 U.S.C. § 1983. (*Id.* at 37-42.) More specifically, Plaintiff alleges that Defendants arrested and prosecuted him without probable cause and with malice as a means to justify their use of excessive force, that he suffered a post-arraignment deprivation of liberty as a result, and that the prosecution was terminated in his favor because the Assistant District Attorney made a motion to dismiss the indictment, which was granted. (*Id.*)

Ninth, Plaintiff asserts a claim against Defendant City of Utica for municipal liability under 42 U.S.C. § 1983 based on the actions of Defendants Cerminaro, D'Ambro, and Nicholson. (*Id.* at 42-43.) More specifically, Plaintiff alleges that Defendant City of Utica was deliberately indifferent to the actions of the other Defendants, that it maintained a custom or policy of allowing such unconstitutional actions, that it inadequately trained or supervised the other Defendants, and that it failed to investigate and/or discipline the other Defendants for their actions. (*Id.*)

Tenth, and last, Plaintiff asserts a claim against all Defendants for deprivation of his rights protected by the constitutional and tort laws of New York State, which includes claims for battery, false arrest, false imprisonment, and malicious prosecution based on the actions underlying his federal claims. (*Id.* at 44-45.)

**B.    Defendants' Counterclaims**

In their Answer to the Second Amended Complaint, Defendants Cerminaro, D'Ambro, and City of Utica asserted two counterclaims against Plaintiff: (1) a claim of assault under New York tort law; and (2) a claim of battery under New York tort law. (Dkt. No. 162, at 13-14 [Defs.' Answer].)

**C.** **Undisputed Material Facts on Defendants' Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations supporting his denial. (*Compare* Dkt. No. 173, Attach. 20 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 193, Attach. 1 [Pl.'s Rule 7.1 Resp.].)

1. The incident on September 18, 2013, began when Walmart loss prevention officer Rashawn Romney noticed what he felt was suspicious activity by Latresea Jones, Plaintiff, and Lasonja Pulluaim, and he subsequently monitored their movements.

2. Mr. Romney called the Utica Police Department because Ms. Jones had stolen merchandise in the past.

3. Walmart security cameras show Ms. Jones, Plaintiff, and Ms. Pulluaim meeting in an aisle, where Ms. Jones took items from Plaintiff's cart, put them into her own cart, and exited Walmart without purchasing the items.

4. Upon arriving at Walmart, Defendant Cerminaro saw Mr. Romney trying to detain Ms. Jones outside the exit.

5. After arresting Ms. Jones, Defendant Cerminaro drove towards the entrance closest to the loss prevention office and saw Mr. Romney running toward this car.

6. Mr. Romney informed Defendant Cerminaro that Plaintiff, who was standing

nearby, was helping Ms. Jones.[1]

7.     Defendant Cerminaro got out of the car to talk to Plaintiff, who was "mouthy" towards Defendant Cerminaro.

8.     The incident became physical when Defendant Cerminaro made contact with Plaintiff and the two came to rest near the fender/trunk of Ms. Pulluaim's car.[2]

9.     After approximately 15 seconds, Defendant D'Ambro arrived on the scene at the same time Plaintiff and Defendant Cerminaro came away from the rear part of Ms. Pulluaim's car. Seeing the two struggling, Defendant D'Ambro tackled both Plaintiff and Defendant Cerminaro to the ground.

10.     For the next 13 seconds, the surveillance video shows Defendant Cerminaro, Defendant D'Ambro, and Plaintiff in one pile on the ground.

---

[1]     Plaintiff denies this asserted fact in part, stating that he does not know what information was provided to Defendant Cerminaro by Mr. Romney. (Dkt. No. 193, Attach. 1, at ¶ 6 [Pl.'s Rule 7.1 Resp.].) Plaintiff's lack of knowledge does not create a genuine dispute of fact. *See Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) (Suddaby, J.) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute."); *In re Horowitz*, 14-CV-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) (stating that, "[o]n a motion for summary judgment, denials based on a lack of knowledge or information sufficient to form a belief are insufficient to contest a disputed fact . . . . Similarly, a response contending to neither admit or deny an allegation does not create a genuine issue of fact"); *accord, Piacente v. Int'l Union of Bricklayers & Allied Craftworkers*, 11-CV-1458, 2015 WL 5730095, at *2 n.3 (S.D.N.Y. Sept. 30, 2015). This fact is therefore deemed admitted.

[2]     Plaintiff denies Defendants' asserted fact to the extent it states that Defendant Cerminaro actually arrested him at this time. (Dkt. No. 193, Attach. 1, at ¶ 8 [Pl.'s Rule 7.1 Resp.].) The Court agrees that the video evidence cited by Defendants does not establish that Defendant Cerminaro was arresting Plaintiff (as opposed to merely detaining him) at this time. The Court therefore has omitted any reference to an arrest in this paragraph.

11.     Then the video shows Defendant Cerminaro arise from the pile, draw his Taser, and deploy it.

12.     The video shows that, after the first five-second Taser cycle, Defendant Cerminaro bent over to deploy the Taser in drive-stun mode into Plaintiff's leg/calf for an additional two cycles as Defendant D'Ambro continued to wrestle with Plaintiff on the ground in some type of neck hold.

13.     When the parties were on the ground, Plaintiff's hands were underneath his body and not visible to Defendant Cerminaro or Defendant D'Ambro.

14.     At this point, the parties were positioned on the ground by the left front portion of Defendant Cerminaro's patrol car, which partially obscured the surveillance camera's view. However, the parties concede that a third Taser deployment concluded Defendants' use of force on Plaintiff, and that Plaintiff was secured in handcuffs shortly thereafter.

15.     When Defendants used force on Plaintiff, they had not checked him for weapons.[3]

16.     Defendants generally knew Plaintiff as someone with a history of carrying a firearm or being in the company of others who possess firearms .[4]

---

[3]     Plaintiff denies this asserted fact, but cites only record evidence that does not actually controvert the asserted fact.  (*Compare* Dkt. No. 173, Attach. 20, at ¶ 16 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 193, Attach. 1, at ¶ 16 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.  *See Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support).

[4]     Plaintiff denies this asserted fact in part, but, based on his citation, appears to admit that he had previously been involved in a shooting.  (Dkt. No. 193, Attach. 1, at ¶ 17 [Pl.'s Rule 7.1 Resp.].)  He has not otherwise cited record evidence that would support his denial of the remainder of this asserted fact.  However, the Court finds that Defendants' characterization that Plaintiff was known to be "armed and dangerous" is not supported by the cited record evidence.

17.     When Defendant Cerminaro originally began the physical interaction with Plaintiff, Defendant Cerminaro was alone and outnumbered two-to-one by Plaintiff and Ms. Pulluiam.[5]

18.     There is no indication in the record that Ms. Pulluaim had been checked for weapons at that point.[6]

19.     Several other patrol cars arrived on the scene to assist.  Plaintiff was taken to Police Officer Washington's car, where Defendant Cerminaro removed the two Taser probes from Plaintiff's back.  Plaintiff was then placed in the car and transported to the Utica Police Station along with Ms. Jones and Ms. Pulluaim.

20.     Defendant Cerminaro told Defendant D'Ambro that he had injured his hand and knee during the altercation with Plaintiff.  Defendant D'Ambro advised him to get medical attention, which he did at Saint Elizabeth's Hospital.  Defendant Cerminaro was discharged from the hospital, he completed the necessary officer injury/exposure report, and he updated the Logistics & Resources Unit about his injuries.

---

The Court has therefore rephrased this portion of the asserted fact to more closely track the language used within the evidence relied upon by Defendants.

[5]     *See, supra*, note 3 of this Decision and Order.  (Dkt. No. 193, Attach. 1, at ¶ 19 [Pl.'s Rule 7.1 Resp.].)

[6]     *See, supra*, note 3 of this Decision and Order.  (Dkt. No. 193, Attach. 1, at ¶ 21 [Pl.'s Rule 7.1 Resp.].)  The Court has omitted the portion of Defendants' asserted fact related to Ms. Pulluiam's "white over coat" because, although the video does show someone wearing something white on his or her upper body, and a separate video shows Ms. Pulluaim wearing a white coat less than eight minutes before, it is impossible to tell from the surveillance video whether such clothing is an overcoat as described by Defendants or whether it would be capable of "easily concealing" a weapon.  (Dkt. No. 173, Attach. 20, at ¶ 21 [Defs.' Rule 7.1 Statement].)

21.     Plaintiff complained of a back injury and said he wanted to go to the hospital for treatment.  Plaintiff was transported to Saint Elizabeth's Hospital by the Utica Fire Department.  At the hospital, Plaintiff was given medical attention and discharged within hours, after which he was returned to the police station.

22.     Defendant Nicholson investigated the incident after Defendant D'Ambro contacted the Criminal Investigations Division about a grand larceny investigation at Walmart.  She contacted Defendant D'Ambro, who informed her that Mr. Romney was the one who called the police about the larceny in progress, and that they found merchandise totaling $1,086.78.

23.     Defendant Nicholson obtained a supporting deposition from Mr. Romney and reviewed the Walmart surveillance videos, from which she concluded that Plaintiff, Ms. Jones, and Ms. Pulluaim were acting in concert and that there was probable cause to believe that the property inside the car and in the cart was stolen from Walmart; all three were charged with grand larceny in the fourth degree.[7]

---

[7]     Plaintiff accepts this asserted fact in part and denies it in part.  (Dkt. No. 193, Attach. 1, at ¶ 26 [Pl.'s Rule 7.1 Resp.].)  However, Plaintiff fails to indicate which portion of the asserted fact he intends to deny.  Such a partial denial is ineffective.  *See Willis v. County of Onondaga*, 14-CV-1306, 2016 WL 7116126, at *5, n.10 (N.D.N.Y. Dec. 6, 2016) ("This partial denial is ineffective . . . [because] it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3).").  Additionally, the evidence cited by Plaintiff does not (a) dispute that Defendant Nicholson obtained a supporting deposition from Mr. Romney and reviewed the surveillance video, or (b) create a genuine dispute of material fact regarding what Defendant Nicholson concluded.  Plaintiff may deny that he was not in fact acting in concert with Ms. Jones, but such denial does not speak to the asserted fact, which involves what Defendant Nicholson concluded.  *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts).  This fact is therefore deemed admitted.

24. Defendant Cerminaro and Defendant D'Ambro reported their use of force and filled out the accompanying Use of Force Reports.

25. Lieutenant Scott Cifonelli investigated the use of force, including the Walmart surveillance video, and found that such force was within the scope of the Utica Police Department's Policy and Procedures Manual.

26. The affidavit of Police Officer David Poccia, the Utica Police Department's Accreditation Program Manager states that, "[s]ince 2009 to date, the Utica Police Department has been an Accredited Agency by the New York State Accreditation Council."

27. The accreditations process requires compliance with 133 standards in order to become an accredited agency for the time period at issue.

28 A yearly compliance form must be completed to verify compliance with each standard.

29. On or about January 15, 2014, Plaintiff was indicted for grand larceny in the fourth degree under N.Y. Pen. L. § 155.30(1) and resisting arrest under N.Y. Pen. L. § 205.30.

30. On or about March 19, 2014, the Assistant District Attorney for Oneida County had the indictment against Plaintiff dismissed in satisfaction of a guilty plea on an unrelated indictment (which resulted in a substantial period of incarceration for Plaintiff) and for other reasons.

D.    **Parties' Briefing on Defendants' Motion for Summary Judgment**

1.    **Defendants' Memorandum of Law**

Generally, in their motion for summary judgment, Defendants make seven arguments. (Dkt. No. 173, Attach. 21, at 7-34 [Defs.'s Mem. of Law].)  First, Defendants argue that

summary judgment should be granted on Plaintiff's Second, Fourth, Seventh, and Tenth Claims because there was probable cause to support Plaintiff's arrest. (*Id.* at 7-10.) More specifically, Defendants argue that, as to Plaintiff's initial encounter with Defendant Cerminaro, probable cause existed as the result of information received from Walmart employee Mr. Romney, who informed Defendant Cerminaro that (a) he had monitored Plaintiff, Ms. Jones, and Ms. Pulluaim in the store, (b) he observed them acting suspiciously, (c) he saw one of the women leave the store without paying for a cart-full of items, and (d) he believed Plaintiff was working with that woman. (*Id.* at 8-9.) As to Defendant D'Ambro, Defendants argue that probable cause existed when (a) he was informed that a larceny was in progress, and (b) he saw Defendant Cerminaro struggling with Plaintiff upon his arrival at the scene. (*Id.* at 9-10.) As to Defendant Nicholson, Defendants argue that there is no admissible evidence that she was involved in Plaintiff's arrest, given the fact that she was not informed of the incident until after Plaintiff had been taken into police custody, and that there is no admissible evidence establishing that she had any intent to confine Plaintiff. (*Id.* at 10.)

Second, Defendants argue that summary judgment should be granted on Plaintiff's Eighth and Tenth Claims because (a) Plaintiff has not received a final outcome on the relevant claims that is consistent with his innocence, and (b) there was probable cause to support his criminal prosecution. (*Id.* at 10-14.) More specifically, Defendants argue that the charges stemming from this incident were dismissed in satisfaction of a guilty plea on an unrelated indictment (for which he received a substantial period of incarceration) and that such dismissal is not consistent with Plaintiff's innocence. (*Id.* at 10-11.) Defendants also argue that probable cause for the prosecution exists as a result of (a) Plaintiff's decision to resist arrest despite orders

from the Defendant officers, and (b) the fact that Plaintiff was indicted on these charges because a grand jury indictment creates a presumption of probable cause. (*Id.* at 11-13.) Defendants argue that there is no admissible evidence showing that the indictment was procured by fraud, perjury, suppression of evidence, or other bad faith police conduct. (*Id.* at 13-14.)

Third, Defendants argue that summary judgment should be granted on Plaintiff's First and Third Claims because the surveillance video shows that he resisted arrest throughout the incident. (*Id.* at 15-20.) More specifically, Defendants argue that (1) Plaintiff was resisting, (2) Defendant Cerminaro was initially outnumbered by Plaintiff and Ms. Pulluaim (who was actively interfering with Defendant Cerminaro's attempts to arrest Plaintiff), (3) neither Plaintiff nor Ms. Pulluaim had been checked for weapons, (4) Defendant Cerminaro was aware that Plaintiff had a history of being armed and that he had shot someone in the past, and (5) Plaintiff's hands were not visible to the officers while the struggle was taking place. (*Id.*) Defendants argue that this combination of factors made the use of force reasonable.

Fourth, Defendants argue that summary judgment should be granted on Plaintiff's Ninth Claim (for failure to train and supervise its officers). (*Id.* at 20-24.) As an initial matter, Defendants argue that a municipal liability claim must be dismissed if all of the substantive federal law claims against the officers are dismissed. (*Id.* at 20.) As to Defendant City of Utica's alleged failure to train Defendant Officers, Defendants argue that Utica police officers are trained in the use of Tasers, Plaintiff has failed to provide evidence of any other incidents that would indicate a lack of training, and Plaintiff has failed to identify a defect in the officers' training. (*Id.* at 22-23.) As to Defendant City of Utica's alleged failure to investigate Defendant Officers' conduct, Defendants argue that an internal investigation was in fact conducted into the incident at issue. (*Id.* at 24.)

Fifth, Defendants argue that Plaintiff's Fifth Claim (for intentional infliction of emotional distress) should be dismissed because it is merely duplicative of the claims for use of excessive force and battery.  (*Id.* at 24-27.)

Sixth, Defendants argue that they should be found to be entitled to qualified immunity.  (*Id.* at 27-33.)  More specifically, as to Plaintiff's false arrest and malicious prosecution claims, Defendants argue that there was arguable probable cause for their actions, and that there is no clearly established principle that a police officer cannot arrest and prosecute an individual where a shopkeeper has provided sworn testimony of a theft.  (*Id.* at 30-32.)  As to the claim of excessive force, Defendants argue that there is no clearly established principle that a police officer cannot use a Taser on an unsearched known felon whose hands are concealed and who is failing to obey the officer's commands.  (*Id.* at 32-33.)

Seventh, Defendants argue that Plaintiff's Tenth Claim (asserting state law causes of action) should be dismissed if the Court grants summary judgment on his federal claims because those state law causes of action are analogous to (and duplicative of) the federal claims, other than Plaintiff's state law cause of action for malicious prosecution.  (*Id.* at 34.)

### 2. Extension of Response Deadline and Plaintiff's Failure to Submit Timely Response

Despite receiving an extension of the response deadline from November 19, 2018, to December 17, 2018, Plaintiff failed to file a response by that deadline.  (*See generally* Docket Sheet.)

### 3. Defendants' Reply Memorandum of Law

In their reply memorandum of law, filed on December 26, 2018, Defendants make two arguments.  (Dkt. No. 178 [Defs' First Reply Mem. of Law].)  First, Defendants argue that their

motion for summary judgment should be granted based on Plaintiff's failure to file a response memorandum of law or otherwise oppose that motion. (*Id.* at 3-4.) Second, Defendants argue that their asserted facts should be deemed to be true based on Plaintiff's failure to file a response to their statement of material facts. (*Id.* at 5.)

### 4. Second Extension of Response Deadline

Out of special solicitude to Plaintiff, the Court granted Plaintiff a second extension of the response deadline to January 24, 2019. (Dkt. No. 190.)

### 5. Defendants' Second Reply Memorandum of Law

In their second reply, filed on January 29, 2019, Defendants note that the extended deadline for Plaintiff to file a response to Defendants' motion for summary judgment had again passed without the filing of any response. (Dkt. No. 191 [Def.'s Second Reply Mem. of Law].)

### 6. Plaintiff's Response

Out of yet another extension of special solicitude to Plaintiff, the Court accepted for consideration Plaintiff's response, received by the Clerk's Office on February 7, 2019, but purportedly dated January 23, 2019. (Dkt. No. 193.) However, to date, there is no indication in the docket that any opposition memorandum of law has been received by the Clerk's Office. (*See, generally,* Docket Sheet.)

### 7. Defendants' Third Reply Memorandum of Law

In their third reply memorandum of law (filed with leave of the Court on February 22, 2019), Defendants make six arguments. (Dkt. No. 195, at 4-10 [Defs.'s Third Reply Mem. of Law].) First, Defendants argue that Plaintiff has failed to comply with N.D.N.Y. Local Rule 7.1(a) by failing to submit an opposition memorandum of law. (*Id.* at 4.)

Second, Defendants argue that summary judgment should be granted on Plaintiff's false arrest and malicious prosecution claims because he has failed to raise any doubts about the veracity of Mr. Romney's testimony, and has in fact admitted certain facts related to that testimony in his response to the statement of material facts. (*Id.* at 5-6.)

Third, Defendants argue that summary judgment should be granted on Plaintiff's false arrest and malicious prosecution claims also because probable cause is based only on what information was available to the officers at the time of the arrest and prosecution; Defendants were unaware of the alleged deal between Ms. Jones and Plaintiff regarding the use of Ms. Jones' Walmart giftcards and therefore that allegation is irrelevant to the probable cause analysis. (*Id.* at 6.)

Fourth, Defendants argue that summary judgment should be granted on Plaintiff's malicious prosecution claims because the indictment was dismissed in a manner that was not indicative of Plaintiff's innocence (i.e., in satisfaction of a guilty plea on other charges). (*Id.* at 7-8.)

Fifth, Defendants argue that summary judgment should be granted on Plaintiff's malicious prosecution claims also because he does not dispute the validity of the grand jury indictment, which creates a presumption of probable cause. (*Id.* at 8-9.)

Sixth, Defendants argue that summary judgment should be granted on Plaintiff's excessive force claims because the use of force in this case was objectively reasonable. (*Id.* at 9-10.) More specifically, Defendants argue that Plaintiff has not disputed that he failed to stop resisting arrest after the first two uses of the Taser by Defendant Cerminaro, or that his hands were underneath him during the struggle, which made it difficult for the officers to handcuff him. (*Id.*)

## II.    LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[8]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[9]

---

[8]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[9]      Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[10]  (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[11]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[12]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

---

[10]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[11]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[12]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

17

statement[13]–even where the non-movant was proceeding *pro se*.[14]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[15]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[13]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[14]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[15]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

## III.    ANALYSIS

### A.    Whether Probable Cause Existed for Plaintiff's Arrest and Prosecution

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 173, Attach. 21, at 7-10 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

#### 1.    False Arrest/Imprisonment Claims

As discussed above, Plaintiff alleges that his seizure, arrest, and imprisonment by Defendants on September 18, 2013, was unlawful.  In determining whether Plaintiff's detention and arrest were lawful, the relevant question is whether that arrest was supported by probable cause.

"'In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred.'" *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 [2d Cir. 2004]).  "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim."  *Jaegly*, 439 F.3d at 152.  "An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 [2d Cir. 1996]).  "This standard 'is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Pabon*, 871 F.3d 164, 174 (2d Cir. 2017) (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 [2003]).  The Court must examine the "totality of the circumstances [surrounding] a given arrest

. . . from the perspective of an objectively reasonable police officer, recognizing that the officer is entitled to draw reasonable inferences on the basis of his prior experience." *Pabon*, 871 F.3d at 174. Notably, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause[;] . . . '[T]he Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.'" *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (emphasis in original).

Here, the admissible evidence in the record supports a finding of probable cause to arrest Plaintiff for suspected involvement in a larceny. Specifically, it is undisputed that, at the time Defendant Cerminaro approached Plaintiff outside the Walmart, Defendant Cerminaro had been informed by Mr. Romney, a store security employee, that Plaintiff was helping Ms. Jones, who had already been apprehended with a cart-full of Walmart goods that she had not purchased. This assertion that Plaintiff was helping Jones with the larceny was based on Mr. Romney's observance of Plaintiff, Ms. Jones, and Ms. Pulluaim on the store's surveillance monitors, including his observance that the three combined all their goods into Ms. Jones' cart before she attempted to exit the store without paying. (Dkt. No. 173, Attach. 2, at 2.) The issue is not whether Mr. Romney was correct in believing that Plaintiff was helping Ms. Jones, but rather whether Defendant Cerminaro relied on the information provided by Mr. Romney reasonably and in good faith. Plaintiff has not provided any argument or evidence to indicate that Defendant Cerminaro's reliance on Mr. Romney's information was unreasonable. Therefore,

given Defendant Cerminaro's knowledge of the report of a larceny at the Walmart and Mr.

Romney's statement that, based on his observations, Plaintiff was helping Ms. Jones in

committing the larceny, Defendant Cerminaro had probable cause to believe that Plaintiff was

committing or had committed a crime at the time he made the decision to detain and/or arrest

Plaintiff. *See Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 421 (S.D.N.Y. 2002) ("A

law enforcement official 'has probable cause to arrest if he received his information from some

person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling

the truth.'"); *Dukes v. City of New York*, 879 F. Supp. 335, 340 (S.D.N.Y. 1995) (noting that the

plaintiff conceded that, "without more, identification by a witness may provide the necessary

justification for the arrest of a suspect").

Because Defendant Cerminaro had probable case to arrest Plaintiff for larceny, Plaintiff's

Second, Fourth, Sixth, and Seventh Claims related to unlawful seizure and false imprisonment

must be dismissed, as must his Tenth Claim to the extent it alleges a state law claim of false

arrest and false imprisonment.

### 2. Malicious Prosecution Claims

Defendants argue that they are entitled to summary judgment based on two specific

elements of Plaintiff's malicious prosecution claims: (1) favorable termination; and (2) lack of

probable cause for commencing the prosecution. (Dkt. No. 173, Attach. 21, at 10-14 [Defs.'

Mem. of Law].) Having already found that probable cause existed to arrest Plaintiff as a matter

of law, the Court turns first to the element of probable cause.

Much like it is to a claim of false arrest, "the existence of probable cause is a complete

defense to a claim of malicious prosecution in New York." *Manganiello v. City of New York*,

612 F.3d 149, 161-62 (2d Cir. 2010). Additionally, "indictment by a grand jury creates a presumption of probable cause" that can be rebutted "only 'by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Manganiello*, 612 F.3d at 162 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 [2d Cir. 2003]).

"[T]he determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that a claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than the time of the arrest." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 574 (S.D.N.Y. 2015). "Under New York law, where 'probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow dissipated between the time of the arrest and the commencement of the prosecution.'" *Deanda*, 137, F. Supp. 3d at 574 (citing *Betts v. Shearman*, 751 F.3d 78, 82 [2d Cir. 2004]). "Facts that come available to the officer after the initiation [of the prosecution], whether they confirm or belie the existence of probable cause, are irrelevant to the inquiry." *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 354 (N.D.N.Y. 2008) (Hurd, J.).

Plaintiff admits in the Second Amended Complaint that he was indicted by a grand jury in Oneida County on January 15, 2014, on charges of grand larceny in the fourth degree and resisting arrest. (Dkt. No. 156, at ¶¶ 67-68 [Second Am. Compl.].) He also provided a copy of the Indictment along with the Second Amended Complaint. (Dkt. No. 156, Attach. 1, at 4.) Additionally, as discussed above in Part I.C. of this Decision and Order, it is undisputed that Plaintiff was indicted on charges related to the September 18, 2013, incident at issue in this

litigation.  This Indictment therefore creates a presumption of probable cause unless Plaintiff has

established a genuine dispute of material fact as to whether the Indictment was procured by

fraud, perjury, or other police misconduct.  The Court finds that Plaintiff has not met the burden

to defeat this presumption.

Plaintiff's allegation in the Second Amended Complaint that, "[u]pon information and

belief, the indictment was founded on falsified, misrepresented, and withheld evidence; perjury

by police witnesses for not making complete statements of the facts surrounding the charges

made against [him] and acted in bad faith in doing so; and a lack of showing the intervening

facts that undermined any probable cause between the time of [his] arrest and subsequent

prosecution" is not sufficient to create a genuine dispute of material fact because he has offered

no evidence to substantiate these allegations.  (Dkt. No. 156, at ¶ 69 [Second Am. Compl.].)  In

particular, the Court finds nothing indicative of fraud, perjury, evidence suppression, or other

bad faith police conduct in the submitted evidence, including the police reports and the grand

jury minutes (which includes testimony from the individual Defendants).  (Dkt. No. 173, Attach.

10.)

Additionally, Plaintiff has not shown that probable cause dissipated in the time between

his arrest and the initiation of the criminal prosecution.  The Supreme Court has recognized that

criminal proceedings are initiated "by way of formal charge, preliminary hearing, indictment,

information, or arraignment."  *Rothgery v. Gillespie Cnty, Texas*, 554 U.S. 191, 214 (2008); *see*

*also Phillips*, 571 F. Supp. 2d at 354 ("The requirement that a plaintiff show an initiation or

continuation of a criminal proceeding by the defendant may be satisfied by a showing that the

defendant filed formal charges and caused the plaintiff to be arraigned.").  The record shows that

Plaintiff was indicted on January 15, 2014, and arraigned on January 23, 2014. (Dkt. No. 156, at 12-13 (Second Am. Compl.].) Consequently, these appear to be the latest dates from which the initiation of the prosecution can be calculated.

The only action that would potentially dissipate probable cause is Ms. Jones' testimony at her plea allocution; during this plea allocution, Ms. Jones stated, on the record, that Plaintiff had "nothing to do with what [she] was doing," i.e., that Plaintiff was not helping her with the larceny and did not know that she planned to steal the items that were placed in her shopping cart. (Dkt. No. 193, Attach. 4, at 43-45.) At a proceeding on March 19, 2014, the Government moved to dismiss the Indictment, not only in satisfaction of a guilty plea on other charges, but also because the Assistant District Attorney "believe[d] there would be evidentiary issues given [Ms. Jones'] allocution." (Dkt. No. 173, Attach. 7, at 3.) However, Ms. Jones' plea allocution did not occur until January 27, 2014, after Plaintiff had been indicted and arraigned. (Dkt. No. 193, Attach. 4.) Her allocution is therefore not relevant to the issue of whether probable cause dissipated between the time of the arrest and the initiation of the prosecution. *Phillips*, 571 F. Supp. 2d at 354.

Although Ms. Jones testified in her deposition that she informed the officers that Plaintiff was not involved in the larceny around the time of the arrest (Dkt. No. 193, Attach. 3, at 36:7-14; 37:14-24; 38:3-14; 38:23-39:4; 43:14-16 [Jones Dep.]), there is no admissible evidence in record to substantiate that Ms. Jones made any kind of sworn statement to that effect before the initiation of the criminal prosecution. Additionally, the record shows that it was Ms. Jones' statements at the plea allocution, and not any previous statements, that appear to have been the basis for the Assistant District Attorney's determination that there were evidentiary issues

related to the prosecution. On the evidence available, the Court cannot say that Plaintiff has shown that evidence became known to Defendants before initiation of the prosecution that would have dissipated probable cause.

For all of the above reasons, the Court grants Defendants' summary judgment motion as to Plaintiff's Eighth Claim, and as to his Tenth Claim to the extent it asserts a malicious prosecution claim under New York law.

**B.     Whether the Force Used by Defendants Was Excessive**

After careful consideration, the Court answers this question in the negative as to Defendant Cerminaro's initial physical interaction with Plaintiff and as to Defendant D'Ambro's physical intervention in that altercation for the reasons stated in Defendants' memorandum of law. (Dkt. No. 173, Attach. 21, at 15-20 [Defs.' Mem. of Law].) However, the Court finds that there is a genuine dispute of material fact as to Defendant Cerminaro's use of his Taser for the following reasons.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018). "The 'proper application' of this standard 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Outlaw*, 884 F.3d at 366 (quoting *Graham v. Connor*, 490 U.S. 386, 396 [1989]). "Because 'the Fourth Amendment test of reasonableness is one of objective reasonableness' . . . the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests

against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citations omitted). The Court is required to "evaluate the record 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,'" and to "'make allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.'" *Tracy*, 623 F.3d at 96. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates the Fourth Amendment." *Graham*, 490 U.S. at 397.

The Court notes as an initial matter that the crime at issue at the time of arrest (larceny) is neither violent nor particularly severe. This factor therefore does not weigh in favor of finding that the physical force and use of a Taser was reasonable.

As to the perceived dangers of the situation and immediate threat to officer safety, the surveillance video shows that Ms. Pulluaim was not in her car as she stated in her deposition testimony, but instead standing close to Plaintiff and Defendant Cerminaro at the time of the initial physical contact; it also shows that she moved along with them throughout a large portion of the time they were struggling near the side and rear of Ms. Pulluaim's car. (Dkt. No. 173, Attach. 18, 10:01:56-10:02:09.) Such evidence supports Defendant Cerminaro's assertion that, not only was he outnumbered by Plaintiff and Ms. Pulluaim at the relevant time, but that Ms. Pulluaim was in a close enough proximity to potentially reach for his weapon while he was engaged with Plaintiff. Additionally, it is undisputed that neither Plaintiff nor Ms. Pulluaim had been checked for weapons by Defendant Cerminaro at the time the altercation took place. Defendant Cerminaro has also stated that, at the time of the arrest, he knew of Plaintiff and was

aware that (a) Plaintiff had been known to be armed at times in the past, and (b) Plaintiff had been previously arrested for shooting another person. (Dkt. No. 173, Attach. 15, at 3; Dkt. No. 173, Attach. 16, at 12.) All of these factors taken together support the use of force due to concerns of immediate threats to officer safety.

As to whether Plaintiff was resisting arrest, contrary to his assertion that he had turned around and begun walking to Ms. Pulluaim's car (and to Ms. Pulluaim's testimony that Plaintiff had already begun getting into the car) when Defendant Cerminaro grabbed him, the surveillance video shows that Plaintiff had not begun to move or even obviously turn away from Defendant Cerminaro at the time the initial contact between the two took place and Plaintiff was pushed up against Ms. Pulluaim's car. (Dkt. No. 173, Attach. 18, 10:01:55-10:01:58.) Additionally, as to the portion of the encounter between when Defendant Cerminaro made the initial physical contact and when Defendant Cerminaro and Plaintiff were tackled by Defendant D'Ambro, the video establishes that Plaintiff was, at least to some extent, resisting Defendant Cerminaro's efforts to restrain him. (Dkt. No. 173, Attach. 18, 10:02:07-10:02:19 [showing the two moving around the back of Ms. Pulluaim's car and Plaintiff eventually appearing to fall partway to the ground after the two have moved from one side of the car to the other].) Although the surveillance video is pixilated and lacking clear detail, it sufficiently shows that Plaintiff and Defendant Cerminaro were engaged in a physical struggle; however, it does not establish to what extent the altercation was powered by resistance by Plaintiff or Defendant Cerminaro's actions. Additionally, the surveillance video shows that, at the moment Defendant D'Ambro tackled Defendant Cerminaro and Plaintiff, the struggle between Defendant Cerminaro and Plaintiff had intensified and become more uncontrolled as they moved away from Ms. Pulluaim's car. (Dkt. No. 173, Attach. 18, 10:02:14-10:02:21.)

However, after Defendant D'Ambro tackled Defendant Cerminaro and Plaintiff, the three moved halfway in front of Defendant Cerminaro's police cruiser, obscuring the surveillance camera's view of the relevant events. (Dkt. No. 173, Attach. 18, 10:02:21-10:03:21.)

With the above considerations in mind, the Court finds that the initial use of force by Defendant Cerminaro and Defendant D'Ambro's intervention by tackling both Defendant Cerminaro and Plaintiff to the ground were objectively reasonable based on the evidence of potential immediate threat and of some degree of resistance to arrest by Plaintiff.

However, the Court finds that there is a genuine dispute of material fact as to whether Defendant Cerminaro's use of his Taser constitutes excessive force. In particular, because the parties dispute whether Plaintiff continued resisting Defendants Cerminaro and D'Ambro while he was on the ground and there is no video evidence to establish that fact one way or the other (given that the three are for all intents and purposes blocked by Defendant Cerminaro's police cruiser at this point in the surveillance video), a reasonable jury could find that, with two officers holding him down on the ground, use of a Taser was not necessary to subdue Plaintiff to handcuff him and take him into custody, particularly given Plaintiff's allegations that he was experiencing significant back pain by that point in the altercation. *See Garcia v. Dutchess Cnty*, 43 F. Supp. 3d 281, 293 (S.D.N.Y. 2014) (denying summary judgment to the defendants due to a genuine dispute of material fact as to whether the use of a Taser was excessive where, by the time the Taser was used, the plaintiff had been taken to the floor, was being restrained by multiple officers on the floor, and the plaintiff's resistance had reduced to a more passive resistance of keeping his arms underneath his body to make it more challenging for the officers to handcuff him). As to whether the argued threat to officer safety posed by Plaintiff's failure

(or, as Plaintiff argues, inability) to remove his arm from under his body justified the Taser use, such question is more appropriately resolved by a factfinder outside of the context of a summary judgment motion due to (a) questions of whether that threat was reasonably perceived under the circumstances at this point in the altercation, and (b) the dispute of fact as to whether Plaintiff was or was not able to move his arm in compliance with Defendant Officers' orders while Defendant D'Ambro holding him down.

The Court notes that, in addition to the dispute of whether and to what extent Plaintiff was resisting arrest after being knocked to the ground by Defendant Cerminaro and Defendant D'Ambro, there is also a genuine dispute of material fact as to whether Defendant Cerminaro warned Plaintiff he was going to use the Taser before he did so; Defendant Cerminaro has stated that he did give a warning, while Plaintiff has stated that he did not. At least one court in this Circuit has noted that the failure to warn before the use of a Taser can constitute excessive force depending on the circumstances. *See Whitfield v. City of Newburgh*, 08-CV-8516, 2015 WL 9275695, at *16 (S.D.N.Y. Dec. 17, 2015) (citing out-of-circuit cases); *see also Penree by Penree v. City of Utica, New York*, 694 F. App'x 30 (2d Cir. 2017) (noting that "[o]ur precedents suggest that it is *not* excessive force to deploy tasers, *after a warning*, against arrestees who are dangerous or resisting arrest") (emphasis added).

Lastly, even if it were found to be appropriate for Defendant Cerminaro to use the Taser under the circumstances, there would still be a question as to whether it was reasonable for Defendant Cerminaro to deploy the Taser specifically in dart mode rather than drive-stun mode for the first cycle; this Court has previously recognized that drive-stun mode is a "less-intense" option. *See Lee v. City of Utica, New York*, 10-CV-1446, 2013 WL 12140336, at *3 (N.D.N.Y.

Mar. 5, 2013) (Hurd, J.) (in distinguishing the relevant situation from a case in which Taser use had been found to be reasonable, the Court noted that "Berger fully deployed the Taser electrodes as opposed to using the less-intense 'drive stun' mode employed by the officers" in the distinguishable case). This is particularly salient given the close proximity Defendant Cerminaro had to Plaintiff at the time of the first Taser cycle and the fact that Plaintiff was restrained also by Defendant D'Ambro at the time of all three Taser deployments. These factual disputes further emphasize the unsuitability of granting summary judgment on this claim.

Based on the above, the Court finds that Defendants are entitled to summary judgment on Plaintiff's First and Third Claims based on the initial encounter with Defendant Cerminaro and Defendant D'Ambro's physical contact with Plaintiff. However, summary judgment is denied as to the portion of Plaintiff's Third Claim based on Defendant Cerminaro's use of the Taser.

### C.  Whether Plaintiff's Fifth Claim for Intentional Infliction of Emotional Distress Should Be Dismissed

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 173, Attach. 21, at 24-27 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

Under New York law, a claim of intentional infliction of emotion distress requires a showing of (1) extreme and outrageous conduct, (2) the intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Both New York courts and courts in this Circuit have routinely held that intentional infliction of emotional distress cannot be used as a substitute for an available traditional tort theory of recovery. *Caravalho v. City of New York*, 13-CV-4174, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

Therefore, to the extent this claim is based on conduct giving rise to Plaintiff's assault, battery, or excessive force claims, it is duplicative of those claims. *Caravalho*, 2016 WL 1274575, at *23; *cf. Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) ("Courts do not dismiss IIED claims [as duplicative] whose substantiating conduct differs from those of other causes of action.").

Plaintiff's intentional infliction of emotional distress claim is based on the alleged use of excessive force without any warning that such force was going to be used, in particular Defendant D'Ambro's tackling of Plaintiff and the use of the Taser, and the filing of the criminal complaint against Plaintiff for resisting arrest. (Dkt. No. 156, at 30 [Second Am. Compl.].) The excessive force conduct is subsumed by Plaintiff's claims for use of excessive force and battery, while the act of filing a criminal complaint against Plaintiff for resisting is subsumed by his claims for malicious prosecution. Therefore, the Court finds that Plaintiff's Fifth Claim is duplicative of his other claims and must be dismissed.

### D. Whether Defendants Cerminaro, D'Ambro, and Nicholson Are Immune from Suit Under the Doctrine of Qualified Immunity

After careful consideration, the Court answers this question in the negative for this purposes of this motion for summary judgment for the following reasons.

"A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law . . . or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred . . . or (3) if the defendant's action was 'objectively legally reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken.'" *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010)

(citations omitted). A right is clearly established where "the existing precedent place[s] the conclusion that [the defendant] acted unreasonably in the[] circumstances beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015). The relevant question is whether the state of the law at the time of the conduct gave Defendants "fair warning" that their actions against Plaintiff were unconstitutional; there is no requirement that the facts of a precedential case be "fundamentally similar" to establish that a right was clearly established. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Put another way, the right must be "sufficiently clear that every reasonable officer would have understood that what he was doing violated that right." *Mullenix*, 136 S.Ct. at 308.

"'Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact.'" *Manganiello*, 612 F.3d at 164 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 367 [2d Cir. 2007]). "The fact finder must determine any disputed material facts, and on the basis of the facts permissibly found, the court must decide 'whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct.'" *Manganiello*, 612 F.3d at 165 (quoting *Zellner*, 494 F.3d at 367).

Plaintiff's only remaining federal claim is for the use of excessive force in Defendant Cerminaro's deployment of his Taser while Plaintiff was being held on the ground by Defendant D'Ambro. The Court finds that it cannot conclude whether Defendant Cerminaro's Taser use violated a clearly established right or was objectively unreasonable based on the admissible evidence currently in the record. As the Court noted previously, there remain genuine disputes of material fact as to the degree to which Plaintiff was resisting arrest after being tackled to the

ground, and whether Defendant Cerminaro warned Plaintiff before deploying the Taser in dart

mode (the first instance of use). These unresolved issues of fact make it difficult, if not

impossible, to assess whether the specific conduct in this case is factually similar to existing

precedent. For example, prior to September 2013, the Second Circuit had found that use of

Tasers against protestors who had chained themselves to a barrel and refused to move was not

excessive force where (a) the officers had used other means that were ineffectual first, and (b)

they warned the protestors they were planning to use Tasers and gave the protestors a last

opportunity to leave voluntarily before the Tasers were deployed. *Crowell v. Kirkpatrick*, 400 F.

App'x 592, 595 (2d Cir. 2010). Here, the Court cannot determine whether a warning was given

and therefore cannot assess the extent of factual similarity with *Crowell*.[16] Nor can the Court

determine whether the passive-resistance factual aspect of *Crowell* is present in this case given

the dispute as to how actively Plaintiff was resisting after he had been tackled to the ground.

These same disputes of fact (the question of resistence in particular) also prevent the Court from

being able to determine whether, even if the right was clearly established, Defendant Cerminaro

was objectively reasonable in believing his uses of the Taser were lawful, particularly in

choosing to use dart mode rather than drive-stun mode for the first cycle despite the fact that

Plaintiff was already restrained by Defendant D'Ambro.

---

[16] The Court notes that the recent case of *Penree by Penree v. City of Utica, New York*, 694 F. App'x 30 (2d Cir. 2017), more clearly states that "[o]ur precedents suggest that it is *not* excessive force to deploy tasers, *after a warning*, against arrestees who are dangerous or resisting arrest." *Penree*, 694 F. App'x at 33 (emphasis added). However, this does not serve as proof that the need for a warning was clearly established in September 2013, although *Crowell* seems to suggest it was by noting the officers' warning in that case as part of its analysis; it certainly can be said provide fair warning that use of a Taser in a non-violent, passive-resistance situation should involve a warning to the suspect before the Taser is deployed. Regardless, as discussed above, there is a genuine dispute of material fact as to whether a warning was given that cannot be resolved on this motion for summary judgment.

For all of the above reasons, the Court denies Defendants' motion for summary judgment to the extent it is based on the issue of whether the doctrine of qualified immunity applies. However, because disputes of fact remain, Defendants will be permitted to raise this issue again at trial should they wish to do so.

    **E.      Whether Defendant City of Utica Should Be Subject to Municipal Liability**

    After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 173, Attach. 21, at 20-24 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

    The Court notes as an initial matter that Defendant City of Utica cannot be held liable under a theory of municipal liability on any of the claims that the Court has already dismissed. *See Burgess v. DeJoseph*, 725 F. App'x 36, 40 (2d Cir. 2018) (affirming the district court's dismissal of plaintiff's municipal liability claim where the underlying constitutional violations were dismissed); *Gomez v. Cty. of Westchester*, 649 F. App'x 93, 96 (2d Cir. 2016) ("[B]ecause Gomez failed to plausibly allege an underlying constitutional violation, the district court properly dismissed his claims for municipal liability."); *Golian v. New York City Admin. for Chidren Servs.*, 282 F. Supp. 3d 718, 733 n.9 (S.D.N.Y. 2017) (dismissing plaintiff's claim for municipal liability where it had already dismissed the underlying constitutional claim). However, because Plaintiff's federal claim for use of excessive force related to the Taser use has survived Defendants' motion for summary judgment, the Court must assess whether there is a basis for imposing municipal liability on that claim.

    In his Second Amended Complaint, Plaintiff alleges that Defendant City of Utica should be held liable for the actions of the officer Defendants in that they (1) encouraged, tolerated,

ratified, and were deliberately indifferent to unconstitutional policies, patterns, practices, and customs of the Utica Police Department, and (b) failed to adequately train, supervise, investigate, and/or discipline officers of the Utica Police Department. (Dkt. No. 156, at 42-43 [Second Am. Compl.].)

To establish municipal liability based on acts of a public official under 42 U.S.C. § 1983, Plaintiff must show that (1) the actions were taken under the color of law, (2) there was a deprivation of a constitutional or statutory right, (3) causation, (4) damage, and (5) that an official policy of the municipality caused the constitutional injury. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60. Additionally, "[i]n order for municipal nonfeasance–e.g., the failure to train, to supervise, or to discipline–to give rise to *Monell* liability, the alleged municipal failure must 'amount[] to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact.'" *Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 340 (N.D.N.Y. 2014) (Mordue, J.) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 [1989]). "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). "The operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Cash v. Cnty of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *see also Benacquista v. Spratt*, 217 F. Supp. 3d 588, 600-01 (N.D.N.Y. 2016) (Hurd, J.) ("'To establish deliberate indifference[,] a plaintiff must

show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights.'").

The Court finds that Plaintiff has failed to provide any evidence to substantiate his allegations that Defendant City of Utica had any policy or custom that caused Plaintiff's alleged constitutional injury. Specifically, he has not provided evidence showing that Defendant City of Utica had any self-made policy or that actions similar to the ones taken by the officer Defendants here were so persistent and widespread so as to constitute a de facto policy. Notably, Plaintiff has not adduced evidence of any previous similar incidents committed by either the officer Defendants or the members of the Utica Police Department as a whole. Nor do statements in the depositions of Plaintiff and Ms. Pulluaim that Defendant Cerminaro had stopped Plaintiff and engaged in a heated verbal confrontation with him not long before September 18, 2013, establish that there was a pattern of unconstitutional conduct.

Similarly, as to Plaintiff's allegations of failure to train, supervise, investigate, and/or discipline the officer Defendants, there is no admissible evidence in the record establishing any way in which Defendant City of Utica failed to train or supervise its officers. Additionally, it is undisputed that the Utica Police Department conducted an investigation into the relevant use of force, and, because that investigation found that the use of force was justified, reasonable, and consistent with Department policies, there was no basis for discipline. (Dkt. No. 173, Attach. 3, at 14.) Lastly, Plaintiff has not shown that Defendant City of Utica was aware of any unconstitutional conduct, much less that it was deliberately indifferent to it. Simply put, Plaintiff's wholly unsubstantiated allegations are not a sufficient basis on which to hold Defendant City of Utica liable under a theory of municipal liability.

For all of the above reasons, the Court finds that Plaintiff's Ninth Claim against Defendant City of Utica must be dismissed.

**F.      Whether Plaintiff's Remaining State Law Claim for Battery Based on Use of the Taser Should Be Dismissed**

After careful consideration, the Court answers this question in the negative for the following reasons.

Based on the Court's findings throughout this Decision and Order so far, the only remaining state law claim asserted by Plaintiff is one for civil battery. Under New York law, "[t]o recover damages for battery, a plaintiff must prove that there was bodily contact, made with intent, and offensive in nature." *Gutierrez v. McGrath Mgmt. Servs., Inc.*, 59 N.Y.S.3d 52, 55 (N.Y. App. Div. 2d Dept. 2017). Contact made during an unlawful arrest is actionable as battery. *Johnson v. Suffolk Cnty Police Dept.*, 665 N.Y.S.2d 440, 440-41 (N.Y. App. Div. 2d Dept. 1997); *accord, Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 325 (W.D.N.Y. 2018); *Remley v. New York*, 665 N.Y.S.2d 1005, 1008 (N.Y. Ct. of Claims 1997). "'An arrest is lawful if made pursuant to a warrant or based upon probable cause,'" and "'[a] lawful arrest is not an assault or battery under New York law, provided the force used was reasonable.'" *Boyler*, 287 F. Supp. 3d at 325-26. Notably, except for the federal requirement that the tort be committed under the color of state law "the essential elements of excessive force [under 42 U.S.C. § 1983] and state law assault and battery claims are substantially identical." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 653 (W.D.N.Y. 2017); *accord, Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) (McAvoy, J.).

As already discussed in detail related to Plaintiff's false arrest and malicious prosecution claims, Defendants had probable cause to arrest Plaintiff on September 18, 2013. His arrest was

therefore lawful, and he consequently must show that the force used in effecting that arrest was unreasonable in order to succeed on his battery claim. *See Bennett v. New York City Housing Auth.*, 665 N.Y.S.2d 91, 92 (N.Y. App. Div. 2d Dept. 1997) ("The existence of probable cause for the injured plaintiff's arrest does not bar causes of action sounding in assault and battery based on the use of excessive force."). The Court has already determined that the amount of force used was reasonable, with the exception of Defendant Cerminaro's use of his Taser, a finding which also applies to Plaintiff's state law claim for battery. Therefore, Plaintiff's Tenth Claim survives only as to his allegation that Defendant Cerminaro's use of the Taser constituted a battery. *See Warr*, 270 F. Supp. 3d at 654 (denying a motion for summary judgment as to a state law assault and battery claim premised on the use of excessive force where the Court had found genuine issues of material facts related the federal use of excessive force claim); *Marcano*, 38 F. Supp. 3d at 264 (denying summary judgment on a state law battery claim because, as with the federal excessive force claim, the Court found questions of fact as to whether the defendants' actions were reasonable under the circumstances).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 173) is **GRANTED** **in part** and **DENIED** **in part**; and it is further

**ORDERED** that **ALL** of Plaintiff's claims are **DISMISSED**, **EXCEPT** for the following three claims:

(a)    Plaintiff's Third Claim based on Defendant Cerminaro's use of the Taser; and

(b)    Plaintiff's Tenth Claim based on Defendant Cerminaro's use of the Taser;

(c)    Defendants Cerminaro, D'Ambro, and City of Utica's counterclaims for state law assault and battery against Plaintiff; and it is further

**ORDERED** that Defendant Nicholson is **<u>DISMISSED</u>** from this action; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a pretrial conference with counsel will be scheduled in this action, at which time the Court will schedule a trial date. The parties are directed to appear at that pretrial conference with settlement authority.

Dated: May 1, 2019
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge